IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATHEW W. ROSSI,    No. 6:21-cv-00056-HZ

          Plaintiff,    OPINION & ORDER

   v.

LANE COUNTY SHERIFF
CLIFTON HARROLD,
SERGEANT J. OLSEN, and
DEPUTY C. SANTINI,

          Defendants.

Mathew Rossi
2605 State Street
Salem, OR 97310-0505

    Pro Se Plaintiff

Sebastian Tapia
Lane County Counsel
125 East 8th Avenue
Eugene, OR 97401

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Mathew Rossi brings claims under 42 U.S.C. § 1983 against Defendants

Sergeant Olsen and Deputy Santini. Defendants move for summary judgment on Plaintiff's

1 – OPINION & ORDER

claims solely based on failure to exhaust under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). The Court denies Defendants' motion for summary judgment.

**BACKGROUND**

In August 2020, Plaintiff was incarcerated at Lane County Jail. Plaintiff alleges that on August 21, 2020, after he was released from the hospital following a suicide attempt, he attempted suicide a second time in the back of a vehicle that Defendants Olsen and Santini were using to transport Plaintiff back to Lane County Jail. Compl. 3, ECF 1. Plaintiff alleges that while attempting to cuff Plaintiff's hands behind his back, Defendant Olsen held Plaintiff's wrist in extreme positions, injuring his wrist. *Id.* at 4. Defendant Santini assisted Defendant Olsen. *Id.* Plaintiff alleges that Defendant Olsen became upset while trying to cuff Plaintiff's wrists, and punched Plaintiff in his left lower back four or five times, causing pain, numbness in Plaintiff's left leg, and kidney pain. *Id.* Plaintiff also alleges that the event exacerbated his anxiety, depression, and post-traumatic stress disorder. *Id.*

Lane County Jail requires that inmate grievances "to contest conditions of confinement, treatment from staff, or a policy or procedure" be filed no later than fourteen days after an event. Dean Decl. Ex. 1 at 32, ECF 19-1. That deadline, along with the procedure an inmate must follow to exhaust their administrative remedies, is listed in the Inmate Information Manual, which was provided to Plaintiff on January 31, 2020. *Id.*; Dean Decl. ¶ 2–3, ECF 19; Dean Decl. Ex. 2 at 1, ECF 19-2. The procedure Lane County Jail employs to evaluate inmate grievances requires the inmate to request a Grievance Form using an Inmate Request Form. Dean Decl. Ex. 1 at 32. The inmate must complete the Grievance Form and return it to the Grievance Supervisor. *Id.* The manual advises that "[f]ailure to initiate a grievance within 14 days or failure to provide reasonable justification for not initiating a grievance within 14 days of the incident will eliminate

2 – OPINION & ORDER

your opportunity for resolution through the grievance process." *Id*. The manual warns inmates that failing to file a grievance within the appropriate time frame could result in a forfeit of the right to further appeal or civil litigation. *Id*.

The Lane County Sheriff's Office—where Defendants worked at the time of the incident—also makes available a Citizen Report Form (CRF). Rossi Decl. Ex. 4. This form allows individuals to report crimes directly to the Sheriff's Office. *Id*.

Following the August 21, 2020 incident, Plaintiff sent an Inmate Request Form to Lt. Rice that indicated Plaintiff "would like to file a complaint/charges against Lane County Sheriffs Officers that transported me back to LCACF from MW hospital on 08/21/20 for Assault . . . I do not want to file a grievance. I want to talk to or file a complaint with Lane County Sheriff's internal investigations." Rossi Decl. ¶ 5, ECF 23; Rossi Decl. Ex. 1, ECF 23-1. A written response on Plaintiff's Inmate Request Form states, "Discussed with Mr. Rossi on 08/31/20. Mr. Rossi refuses to utilize a grievance form and wishes now to file a criminal complaint alleging assault. He will be provided a CSR. CSR attached." Rossi Decl. Ex. 1. On September 1, 2020, Plaintiff used an Inmate Request Form to request the names of the officers who had transported and allegedly assaulted him on August 21, 2020, "so I can fill out this Lane County Sheriff's Office Citizen Report form." Rossi Decl. ¶ 6. Plaintiff received the names of the officers on September 2, 2020. *Id*.

On September 2, 2020, Plaintiff returned the Lane County Sheriff's Office Citizen Report Form describing the circumstances of his assault to Sgt. Cleland via Inmate Request Form, and Sgt. Cleland indicated that he had submitted it to Lane County Sheriff's Office. *Id*. ¶ 8. On September 21, 2020, Plaintiff sent an inmate request form requesting the status of Lane County's investigation into his Report. *Id*. ¶ 9. Sgt. Cleland responded, "The form was delivered to LCSO

3 – OPINION & ORDER

Records. It is currently being reviewed by LCSO Administration to determine an appropriate course of action." *Id*. On October 19, 2020, Plaintiff again requested the status of his Citizen Report and expressed his fear that officers and staff were retaliating against him. *Id*. ¶ 10. Sgt. Cleland responded, "This matter is still under review. Thank you for your patience." *Id*. On October 20, 2020, Plaintiff sent an Inmate Request Form to Lt. Rice which reported his assault, sexual harassment, and his concerns about retaliation by another officer. *Id*. ¶ 11. Sgt. Cleland responded that Plaintiff's "assault complaint and sexual harassment complaint are being separately investigated. I issued you grievance 2020-721 today for your complaint against Sgt. Molony." *Id*.

On November 4, 2020, over two and a half months after Plaintiff first sought to make a complaint against the Defendants, Chief Deputy Carl Wilkerson responded to Plaintiff's Citizen Report regarding his assault and advised that because the incident occurred while Plaintiff was in custody, the complaint "should be processed through jail administrative processes, i.e., inmate grievance. The incident will not be further reviewed unless it is through a grievance." *Id*. ¶ 12. Plaintiff completed grievances against Defendants Olsen and Santini on November 9, 2020, more than two months after the fourteen-day deadline. *Id*. ¶¶ 16–17. Tapia Decl. Ex. 3, ECF 18-1. Both grievances were denied as untimely on November 13, 2020. Rossi Decl. ¶¶ 16–17. Sgt. Cleland noted that Plaintiff had declined to file a grievance in late August 2020 and claimed Plaintiff did not provide any justification to explain his late filing of the grievances concerning the incident. *Id*.

Plaintiff sent an Inmate Request Form asking for additional grievance forms and explained that Chief Deputy Wilkerson had instructed Plaintiff to file a grievance. *Id*. ¶ 18–19. Sgt. Cleland denied Plaintiff's request for new grievance forms because the jail had already

denied his grievances concerning the August 21, 2020 incident as untimely. *Id.* On November 22, 2020, Plaintiff sent an Inmate Request form to Sgt. Cleland to ask what other administrative remedies were available. *Id.* ¶ 21. Sgt. Cleland responded that to the best of his knowledge no other administrative remedies were available to Plaintiff. *Id.* Plaintiff attempted to file another Lane County Sheriff's Office Citizen Report, and Sgt. Cleland denied his request for another Citizen Report form because his original complaint remained on file. *Id.* ¶ 24.

## STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Rsch., Inc., 658 F.3d 1108,

1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendants argue that they are entitled to summary judgment because there is no question of fact that Plaintiff failed to exhaust his administrative remedies and that those remedies were effectively available to him. Plaintiff argues that he should be excused from exhausting his administrative remedies because Defendants "purposely frustrated Plaintiff's repeated attempts to have his alleged assault . . . investigated." Pl. Resp. 6, ECF 22.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the PLRA "in the wake of a sharp rise in prisoner litigation in the federal courts." Woodford v. Ngo, 548 U.S. 81, 84 (2006). The PLRA strengthened the exhaustion requirement so that "[e]xhaustion is no longer left to the discretion of the district court[,] but is mandatory." Id. at 85 (citation omitted). "Prisoners must now exhaust all 'available' remedies . . . even where the relief sought— monetary damages—cannot be granted by the administrative process." Id. The exhaustion requirement "applies to all inmate suits about prison life" that do not involve the duration of a prisoner's sentence. Nettles v. Grounds, 830 F.3d 922, 932 (2016) (quoting Peter v. Nussle, 534 U.S. 516, 532 (2002)).

The PLRA's exhaustion requirement mandates "proper" exhaustion of administrative remedies. *Woodford*, 548 U.S. at 93. Proper exhaustion means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'" *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original). A remedy must be available "as a practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting *Brown*, 422 F.3d at 937) (internal quotation marks omitted).

There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). These circumstances emerge when: (1) the "administrative procedure . . . operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme might be so opaque that it becomes . . . incapable of use;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60 (citations omitted). When one of these circumstances arises, "an inmate's duty to exhaust 'available' remedies does not come into play." *Id.* at 1859.

In *Williams v. Paramo*, 775 F.3d 1182 (9th Cir. 2015), the Ninth Circuit articulated the procedure for determining whether a prisoner has exhausted their available administrative remedies. First, the defendant must "prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Id.* at 1191 (citation omitted). "This burden is achieved by producing testimony from jail deputies that describe the jail's grievance procedure and provide an overview of the jail's record-keeping system." *Williams v. Gore*, No.

15-CV-654, 2017 WL 1354695, at *5 (S.D. Cal. Mar. 24, 2017) (citing *Morton v. Hall*, 599 F.3d 942, 944 (9th Cir. 2010) (affirming district court's finding that defendants satisfied their initial burden by submitting testimony of jail coordinators who declared that they reviewed records and "found no evidence that Morton had ever filed a grievance pertaining to his assault"). Then, the burden shifts to the plaintiff, who must prove that the existing and generally available administrative remedies were unavailable to him by "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Albino*, 747 F.3d at 1172.

On October 6, 2021, the Court allowed Plaintiff to take discovery to determine whether he was prevented from exhausting his claims by the jail's actions. ECF 30. At first, Defendants' counsel delayed discovery by attempting to force pro se Plaintiff to explain how his plainly relevant requests related to the exhaustion issue. ECF 37, 38. After the Court intervened, Plaintiff finally received responses to his interrogatories, but the Defendants did not provide documents related to the Sheriff's Office's processing of Plaintiff's CRF. Even these responses were delayed however after Defense counsel mistakenly included the wrong inmate ID number on the envelope containing the interrogatory responses.

Plaintiff does not dispute that Lane County Jail established a grievance procedure which it made generally available to inmates. Instead, he argues that he should be excused from failing to exhaust his administrative remedies because the jail employees led him to believe that his complaint was under investigation and failed to notify him that he used the wrong procedure for seeking redress until after the deadline for filing an inmate grievance had passed. Pl. Resp. 7–8.

Defendants have failed to meet their burden and prove that Plaintiff failed to exhaust given Plaintiff's evidence that the remedies were effectively unavailable because of Defendants'

actions. The undisputed evidence in the record demonstrates that Plaintiff first attempted to file a complaint about the incident just five days after it occurred. Rossi Decl. 1–2, Ex. 1. He stated that he wished to file a complaint with the Lane County Sheriff's office "internal investigations." *Id.* It is true that Plaintiff also admits that on August 31, 2020, within his fourteen-day window to file a grievance, Lt. Rice asked him why he did not want to file a grievance for the incident, and Plaintiff said that he did not want to file a grievance because grievances do not actually resolve any issues at the jail. Pl. Resp. 4; Rossi Decl. ¶¶ 5, 24. But despite this statement, Plaintiff completed the Citizen Report Form, which he returned to the jail on September 2, 2020, two days before the fourteen-day deadline to file a grievance concerning the August 21, 2020 assault with the office that employed the officers accused of assaulting him.

Defendants have shown that there was an available administrative remedy, the prison grievance procedure, and they have shown that Plaintiff did not avail himself of that particular procedure—at least not at first. But Plaintiff has then shown that the Defendants' conduct in this case made the generally available procedure unavailable to him because of "unduly prolonged" machinations. *Williams*, 775 F.3d at 1191; *Ross*, 136 S. Ct. 1859–60. Here, the Sherriff's Office—the office that employed the Defendants during the incident—took two months to respond to Plaintiff's request. And during this time, Plaintiff followed up multiple times, and each time Defendants responded that the matter was still being reviewed. When they did finally substantively respond, they stated that because the incident occurred while Plaintiff was in custody, it would not be reviewed except via a grievance. Understandably, Plaintiff then attempted to file a grievance—only to be told that his grievance was untimely and there was nothing left for him to do. This one-two step of postponing the simple rejection of Plaintiff's CRF until well after the time for him to file a grievance has passed reeks of the undue delay and

excessive machinations that the Supreme Court alluded to in *Ross*. And because the Defendants failed to introduce evidence showing otherwise, the Court credits Plaintiff's extensive factual allegations and documentation regarding Defendants' dilatory tactics.

In short, the "the evidence produced by the Defendants at most meets their burden of demonstrating a system of available administrative remedies at the initial step of the *Albino* burden-shifting inquiry, but Defendants have not carried their ultimate burden of proof in light of [Plaintiff's] factual allegations." *Williams*, 775 F.3d at 1192. "The evidence submitted by Defendants generally outlines the procedure for filing a formal complaint, but it does not rebut [Plaintiff's] evidence that administrative remedies were not available to him because his filings" were needlessly delayed by the jail and sheriff's office officials and the as-yet unexplained machinations of their review process *Id.* Because Defendants have failed to meet their burden, the Court cannot conclude, based on the evidence currently before it, that Plaintiff failed to exhaust an available administrative remedy.

## CONCLUSION

Defendants' Motion for Summary Judgment [17] is DENIED. All other pending motions are denied as moot.

IT IS SO ORDERED.

DATED:   November 22, 2022   .

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge

10 – OPINION & ORDER